# EXHIBIT A

## TABLE OF CONTENTS

## EXHIBITS

| Exhibit | Description | |
|---------|-------------|---|
| A | State Court Summons and Complaint | Pages 6 to 36 |

08-29-11.03 06PM.CLASS ACTION          Janney San Diego   816661956          # T

AUG/26/2011/FRI 05:34 PM          FAX No.          P. 006

**SUMMONS**
*(CITACION JUDICIAL)*

SUM-100

FILED
CIVIL BUSINESS OFFICE C
CENTRAL DIVISION

2011 AUG 26 P 3 03

CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

John R. Hart, Ronald Langley, Robert G. Deuster, Richard D. Ruppert
(see attachment page for additional defendants)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

George Assad, Derivatively on Behalf of PICO HOLDINGS, INC.

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandado. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* San Diego Superior<br><br>220 West Broadway<br>San Diego, CA 92101 | CASE NUMBER:<br>*(Número del Caso):*<br>37-2011-00096962-CU-BT-CTL |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Kathleen A. Herkenhoff, 12707 High Bluff Drive, # 200, San Diego, CA 92130  Phone: 858-794-1441

| | | |
|---|---|---|
| DATE:<br>*(Fecha)* 8/26/11 | Clerk, by<br>*(Secretario)* M. Jusella | , Deputy<br>*(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☒ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):
3. ☐ on behalf of (specify):  JULIE H. SULLIVAN
   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other (specify):
4. ☒ by personal delivery on (date): 08/31/11

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

Page 1 of 1

08-30-11,03 06PM,CLASS ACTION          Jenney San Diego ;9188634956          # ฿' 44

| | SUM-200(A) |
|---|---|
| SHORT TITLE:<br>George Assad v John R. Hart, et al. | CASE NUMBER: |

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff    ☑ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

Julie H. Sullivan, Kristina M. Leslie, Carlos C. Campbell, Kenneth J. Slepicka and DOES 1-25, inclusive,

Defendants

and

PICO HOLDINGS, INC.,

Nominal Party

Page  2  of  2

Page 1 of 1

Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

**Exhibit A, Page 7**

08-29-11.03 OGPM, CLASS ACTION       Jenney San Diego   .9166084966     # 5. 33

AUG/26/2011/FRI 05:34 PM       FAX No.       P. 007

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Kathleen A. Herkenhoff, Esq. 168562 <br> THE WEISER LAW FIRM, P.C. <br> 12707 High Bluff Drive, # 200 <br> San Diego, CA 92130 <br> TELEPHONE NO.: 858-794-1441     FAX NO.: 858-794-1450 <br> ATTORNEY FOR (Name): Plaintiff, George Assad | F I L E D <br> CIVIL BUSINESS OFFICE 9 <br> CENTRAL DIVISION <br><br> 2011 AUG 26 P 3:03 <br><br> CLERK-SUPERIOR COURT <br> SAN DIEGO COUNTY, CA |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Diego
STREET ADDRESS: 220 West Broadway
MAILING ADDRESS:
CITY AND ZIP CODE: San Diego, CA 92101
BRANCH NAME: Central

CASE NAME:
~~George Assad v John E. Hart, et al.~~

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: 37-2011-00095962-CU-BT-CTL |
|---|---|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter | [ ] Joinder <br> Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: <br> DEPT: |

**BY FAX**

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [✓] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition (not specified above) (43)

2. This case [✓] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [✓] Large number of separately represented parties
   b. [✓] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [✓] Substantial amount of documentary evidence
   d. [✓] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [✓] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [✓] monetary b. [✓] nonmonetary; declaratory or injunctive relief c. [ ] punitive
4. Number of causes of action (specify): 4
5. This case [ ] is [✓] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related cases. (You may use form CM-015.)

Date: 08/26/2011

Kathleen A. Herkenhoff
_____
(TYPE OR PRINT NAME)                 (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use <br> Judicial Council of California <br> CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740; <br> Cal. Standards of Judicial Administration, std. 3.10 <br> www.courtinfo.ca.gov

08-29-11.03 06PM, CLASS ACTION                    Jannny San Diego  .8190634955        # h  43

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
Damage/Wrongful Death
Uninsured Motorist (46) (*if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto*)

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/
Wrongful Death
Product Liability (*not asbestos or toxic/environmental*) (24)
Medical Malpractice (45)
Medical Malpractice–
Physicians & Surgeons
Other Professional Health Care
Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip
and fall)
Intentional Bodily Injury/PD/WD
(e.g., assault, vandalism)
Intentional Infliction of
Emotional Distress
Negligent Infliction of
Emotional Distress
Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
Practice (07)
Civil Rights (e.g., discrimination,
false arrest) (*not civil harassment*) (08)
Defamation (e.g., slander, libel)
(13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice
(*not medical or legal*)
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease
Contract (*not unlawful detainer
or wrongful eviction*)
Contract/Warranty Breach–Seller
Plaintiff (*not fraud or negligence*)
Negligent Breach of Contract/
Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open
book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections
Case
Insurance Coverage (*not provisionally
complex*) (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property (*not eminent
domain, landlord/tenant, or
foreclosure*)
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal
drugs, check this item; otherwise,
report as Commercial or Residential*)
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court
Case
Writ–Other Limited Court Case
Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor
Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
(*arising from provisionally complex
case type listed above*) (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of
County)
Confession of Judgment (*non-
domestic relations*)
Sister State Judgment
Administrative Agency Award
(*not unpaid taxes*)
Petition/Certification of Entry of
Judgment on Unpaid Taxes
Other Enforcement of Judgment
Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified
above*) (42)
Declaratory Relief Only
Injunctive Relief Only (*non-
harassment*)
Mechanics Lien
Other Commercial Complaint
Case (*non-tort/non-complex*)
Other Civil Complaint
(*non-tort/non-complex*)
**Miscellaneous Civil Petition**
Partnership and Corporate
Governance (21)
Other Petition (*not specified
above*) (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult
Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late
Claim
Other Civil Petition

CM-010 [Rev. July 1, 2007]                    **CIVIL CASE COVER SHEET**                    Page 2 of 2

Exhibit A,Page 9

AUG/26/2011/FRI 05:34 PM          FAX No.                    P.005



THE WEISER LAW FIRM, P.C.
KATHLEEN A. HERKENHOFF (168562)
12707 High Bluff Drive, Suite 200
San Diego, CA 92130
Telephone: 858/794-1441
Facsimile: 858/794-1450
kah@weiserlawfirm.com

Attorneys for Plaintiff

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN DIEGO

GEORGE ASSAD, Derivatively on Behalf of     Case No. 37-2011-00095952-CU-BT-CTL
PICO HOLDINGS, INC.,

                          Plaintiff,         SHAREHOLDER DERIVATIVE
                                             COMPLAINT FOR BREACH OF
                                             FIDUCIARY DUTY AND UNJUST
                                             ENRICHMENT

       vs.

JOHN R. HART, RONALD LANGLEY,
ROBERT G. DEUSTER, RICHARD D.
RUPPERT, JULIE H. SULLIVAN,
KRISTINA M. LESLIE, CARLOS C.
CAMPBELL, KENNETH J. SLEPICKA, and
DOES 1-25, inclusive,                        DEMAND FOR JURY TRIAL

                          Defendants,

– and –

PICO HOLDINGS, INC.,

                          Nominal Party.

SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND UNJUST
ENRICHMENT

08-28-11.02 08PM:CLASS ACTION            Janney San Diego   .9158634055        #  8   33

1.     This is a shareholder derivative action on behalf of nominal defendant PICO Holdings, Inc. ("PICO" or the "Company") against PICO's Board of Directors (the "Board") and certain of PICO's current executive officers.  This action seeks to hold defendants liable for breach of their fiduciary duties of candor, good faith and loyalty, unjust enrichment, and aiding and abetting from 2010 to the present (the "Relevant Period") in connection with the award of excessive and unwarranted 2010 executive compensation.

## NATURE OF THE ACTION

2.     This is a failed "say on pay" shareholder derivative action, arising from the Board's unwarranted and excessive spending of Company (*i.e.*, stockholders') funds on executive compensation -- particularly the Board's recent authorization of a 2010 pay increase for PICO's President and Chief Executive Officer ("CEO"), John R. Hart ("Hart"), despite its stated "pay-for-performance" policy, which is purportedly based upon providing a *"superior return"* to shareholders and aligning shareholder and executive interests. A majority of the Company's stockholders agree; they rejected the Board's business judgment by voting *against* the Board's recommended approval of the excessive 2010 executive compensation awards. Nonetheless, the CEO compensation increase was again ratified by the Board after the vote because it took no action to modify or rescind the prior unjust award, to the detriment of the Company and its stockholders.

3.     During 2010, PICO's stock price decreased from approximately $33.17 a share to approximately $31.80 a share, a decline of more than 4%.  Notably, this is particularly poor performance when compared to the Dow Jones Industrial Average (the "Dow"), which *increased* by over 9% during the same time period.  Thus, the Company's stock lagged the Dow by almost *14%* in 2010.  Additionally, defendants reported net income of *negative $11.17 million*.  Further, the Company's free cash flow per share dropped from *negative $1.36* in 2009 to *negative $2.93* in 2010.

4.     Given the precipitous drop in the Company's share price in 2010 and the decline in other key performance metrics, there is doubt that the Board's decision to *increase* 2010 executive compensation was reasonable, loyal, and in good faith. By increasing 2010 executive compensation, the Board also violated its own purported pay-for-performance executive compensation policy, which

- 1 -

SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND UNJUST
ENRICHMENT

08-29-11 03 06PM CLASS ACTION          Janney San Diego  .316 6034955          P  9  33

1    the Board touted in Company proxies. Thus, there is reason to doubt that the Board complied with its

2    fiduciary duties and that its decisions were presumptively protected business judgments.

3         5.      Historically, defendants and, in particular, the Board's Compensation Committee (the

4    "Compensation Committee") have represented publicly that the Board's executive compensation

5    practices are firmly rooted in a "pay-for-performance" policy, and indeed, the Board reaffirmed that

6    covenant for 2010 because it claimed that it was "paying for performance." For instance, in PICO's

7    Proxy Statement filed on April 1, 2011 (the "Proxy"), the Board represented that the intent of its

8    compensation policy was to align shareholder and executive interests. In particular, the Board stated

9    that their policy was to "reward executive[s] for achieving a *superior return...*" for shareholders.

10        6.      Stated another way, the Company's executives should receive superior compensation

11    only if they bring a "*superior return*" to PICO stockholders and align shareholder and executive

12    interests, and they should receive less compensation when they do not. Despite its public statements,

13    however, the Board did the exact opposite. Here, the Board and the Company's senior officers have

14    *lessened* stockholder value and other key financial metrics, yet the Board increased 2010 executive

15    compensation for Hart.

16        7.      In particular, despite stock performance that lagged the Dow by nearly 14% during 2010

17    and despite the fact that the Board reported negative net income and a decline in free cash flow per

18    share, the Board inexplicably *increased* executive compensation in 2010 for Hart in direct violation of

19    their publicly stated pay for performance policy. Although Hart delivered poor returns to PICO's

20    shareholders during 2010, the Board nonetheless increased Hart's 2010 compensation to nearly *$14.3*

21    *million* from $2.4 million in 2009 -- a *488%* increase. This was pay for *underperformance,* in direct

22    violation of the Board's purported pay for performance policy and its own public statements, and it

23    casts doubt upon the Board's loyalty and business judgment.

24        8.      Indeed, in addition to violating its own stated pay for performance policy, the Board's

25    decision to increase 2010 executive compensation also demonstrates that their prior statements that they

26    would only increase compensation if management delivered a "superior return" to shareholders and

27    aligned shareholder and executives interests were false and misleading. Clearly the Board's decision to

28    increase 2010 executive compensation had no relation whatsoever to the defendants' "superior return"

<div align="center">- 2 -</div>

<div align="center">SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND UNJUST<br>ENRICHMENT</div>

08-29-11,03 09PM.CLASS ACTION                    Janney San Diego  ;9166694966          # 13  33

1  to stockholders for 2010.  Additionally, as alleged herein, PICO shareholders have concluded that 2010

2  executive pay increases were not in their, or the Company's, best interests.

3       9.       Fortunately for the Company's shareholders, for the first time in the Company's history,

4  a "say on pay" vote was conducted via the Proxy, whereby PICO shareholders were afforded the chance

5  to voice their dissatisfaction with the Board's clear disregard for their interests, the Board's own prior

6  statements regarding its pay for performance compensation policy, and the Board's apparent refusal to

7  acknowledge the Company's dreadful performance in determining executive compensation for 2010.  In

8  the Proxy, the Board unsurprisingly recommended that shareholders approve the Board's executive

9  compensation program and the material 2010 pay increase for Hart, despite the fact that management

10  (and Hart in particular) did not produce any "superior return" for stockholders and did not align

11  shareholder and executive interests.

12       10.      On May 13, 2011, an overwhelming majority (61%) of voting PICO stockholders

13  *rejected* the Board's 2010 senior officer compensation recommendation.  Clearly, PICO's shareholders

14  concluded that 2010 executive pay increases were not in their best interests and that the Board was not

15  paying for performance.

16       11.      Unfortunately for PICO stockholders, however, despite the adverse shareholder vote,

17  which occurred over three months ago, the Board has not rescinded the excessive 2010 executive

18  compensation, *nor* has the Board indicated any intention to do so.  In fact, the Board has not even

19  commented on the negative vote.

20       12.      The directors on the Board breached their fiduciary duties by materially increasing 2010

21  executive compensation in the wake of substantial diminution in shareholder value after claiming to

22  adhere to a strict pay-for-performance policy, which hinged upon a "superior return" to stockholders

23  and aligning stockholder and executive interests.  The inference that the Board breached its fiduciary

24  duties is supported by the facts that: (a) a majority of the Company's stockholders voted that 2010

25  executive compensation was not in their best interests; and (b) the Board has yet to respond to the

26  majority will of its stockholders (nor has it indicated it will) in any way even though the negative vote

27  occurred nearly three months ago.  By falsely claiming that the Company's executives would receive

28

- 3 -

SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND UNJUST
ENRICHMENT

1    additional compensation only if a "superior return" was delivered to PICO stockholders, the Board also

2    breached its fiduciary duties by issuing a series of materially misleading statements.

3       13.    For all of these reasons, the Board cannot now hide behind the so-called "business

4    judgment rule," which is a summary judgment stage or trial stage defense, and which is only available

5    to faithful fiduciaries. Based on the particularized facts alleged herein, plaintiff (and the majority of the

6    Company's stockholders) has cast doubt on the Board's decision-making, and the accuracy and

7    truthfulness of its public statements, and accordingly, this derivative action on behalf of the Company

8    should proceed.

9       14.    By this shareholder derivative action, plaintiff seeks to recover damages and other relief

10   on behalf of PICO against defendants for their breaches of fiduciary duties of candor, good faith, and

11   loyalty, and for unjust enrichment. Absent this action, the majority will of the Company's stockholders

12   shall be rendered meaningless, and the Company's rights against its wayward fiduciaries will not be

13   exercised, to the further detriment of the Company.

14                        **JURISDICTION AND VENUE**

15      15.    This Court has jurisdiction pursuant to the California Constitution, Article IV, §10 and

16   California Corporations Code §800.  The amount in controversy, exclusive of interest and costs,

17   exceeds the jurisdictional minimum of this Court.

18      16.    A true and correct copy of this Complaint was delivered to PICO before its filing with

19   the Court.

20      17.    Venue is proper in this Court because PICO is a California corporation, which has a

21   substantial presence in California and is headquartered in La Jolla, California.  Moreover, each

22   defendant has had extensive contacts with California as a director and/or officer of PICO or otherwise,

23   which makes the exercise of personal jurisdiction over them proper.

24                            **THE PARTIES**

25      18.    Plaintiff George Assad ("Plaintiff") is a shareholder of PICO and has been continuously

26   throughout the Relevant Period.

27      19.    Nominal party PICO is a California corporation with its executives offices located at

28   7979 Ivanhoe Avenue, Suite 300, La Jolla, California 92037.  According to its public filings, the

- 4 -

SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND UNJUST
ENRICHMENT

OB-29-11.03 06PM.CLASS ACTION                    JANNEY San Diego  .3166634995           # 12  33

1  Company "together with its subsidiaries, engages in the water resource and water storage, real estate,

2  insurance, and agribusiness businesses."

3      20.    Defendant Hart has served as the Company's President and CEO since 1996.  In

4  addition, defendant Hart has served as a director of the Company since 1996.

5      21.    Defendant Ronald Langley ("Langley") has served as a director of the Company since

6  1996.

7      22.    Defendant Robert G. Deuster ("Deuster") has served as a director of the Company since

8  February 2011.   In addition, defendant Deuster has served as a member of the Compensation

9  Committee during the Relevant Period.

10      23.    Defendant Richard D. Ruppert ("Ruppert") has served as a director of the Company

11  since 1996. In addition, defendant Ruppert has served as a member of the Compensation Committee

12  during the Relevant Period.

13      24.    Defendant Julie H. Sullivan ("Sullivan") has served as a director of the Company since

14  2009.

15      25.    Defendant Kristina M. Leslie ("Leslie") has served as a director of the Company since

16  2009. In addition, defendant Leslie has served as a member of the Compensation Committee during the

17  Relevant Period.

18      26.    Defendant Carlos C. Campbell ("Campbell") has served as a director of the Company

19  since 1998. In addition, defendant Campbell has served as a member of the Compensation Committee

20  during the Relevant Period.

21      27.    Defendant Kenneth J. Slepicka ("Slepicka") has served as a director of the Company

22  since 2005.

23      28.    Collectively, defendants Hart, Langley, Deuster, Ruppert, Sullivan, Leslie, Campbell,

24  and Slepicka shall be collectively referred to herein as the "Defendants."

25      29.    Collectively, defendants Campbell, Leslie, Ruppert, and Deuster shall be collectively

26  referred to herein as "Compensation Committee Defendants."

27      30.    The true names and capacities of defendants sued herein under California Code of Civil

28  Procedure Section 474 as Does 1 through 25, inclusive, are presently not known to plaintiff, who

- 5 -

SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND UNJUST
ENRICHMENT

08-29-11.03 06PM.CLASS ACTION                    Jannov San Diego   ,9166634755                    # 13   33

1 therefore sues these defendants by fictitious names. Plaintiff will seek to amend this Complaint and

2 include these Doe defendants' true names and capacities when they are ascertained. Each of the

3 fictitiously named defendants is responsible in some manner for the conduct alleged herein and for the

4 injuries suffered by PICO.

**THE DUTIES OF PICO'S DIRECTORS AND OFFICERS**

6      31.    As directors and officers of PICO, the Defendants owed PICO and its shareholders an

7 unremitting duty of loyalty that requires directors and officers to put the best interests of PICO's

8 shareholders ahead of their own personal interests and the interests of PICO's corporate managers.

9 Directors who fail to act in the shareholders' best interests breach their fiduciary duty of loyalty and

10 may be held liable for damages. A claim for a breach of the duty of loyalty is, as a matter of law, non-

11 exculpable.

12     32.    Because of their executive and directorial positions with PICO, Defendants knew or

13 should have known that by increasing 2010 executive compensation while PICO's share price lagged

14 the Dow by 14% and while key financial metrics were down, they were breaching their fiduciary duties

15 of candor, good faith, loyalty and reasonableness owed to PICO, as well as unjustly enriching certain of

16 the Company's senior officers. Defendants also knew or should have known that by unanimously

17 recommending shareholder approval of the 2010 executive compensation in the Proxy they were

18 breaching their fiduciary duty of candor and violating the Board's purported pay-for-performance

19 executive compensation policy. There is doubt that those decisions were presumptively protected

20 business judgments, and that the Board acted loyally in making these business judgments.

21     33.    Because of their executive and directorial positions with PICO, the Defendants also

22 knew or should have known that the Proxy's (and other filings) repeated statements that the Board only

23 pays for performance were false and misleading. By causing such statements to be made, the

24 Defendants were breaching their fiduciary duties of loyalty, good faith, candor and independence owed

25 to PICO and its shareholders and these actions do not qualify for protection under the business

26 judgment rule. The 2010 executive compensation increases were inconsistent with the Board's stated

27 pay for performance policy and the repeated statements to the contrary were designed to and did

28

- 6 -

SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND UNJUST
ENRICHMENT

1  conceal the fact the Board was overpaying the Company's executive officers via compensation plans

2  premised on an illusory pay-for-performance policy.

3      34.    At times relevant hereto, Defendants were the agents of each of the other Defendants and

4  were at all times acting within the course and scope of such agency.

5      35.    Pursuant to the Company's Compensation Committee charter, the Compensation

6  Committee Defendants were specifically obligated, *inter alia*, to:

7      (a)    Evaluate the performance of the CEO and other elected officers in light of the

8  approved performance goals and objectives;

9      (b)    Set the compensation of the CEO and other elected officers based upon the

10  evaluation of the performance of the CEO and the other elected officers, respectively; and

11      (c)    Make recommendations to the Board with respect to new cash-based incentive

12  compensation plans and equity-based compensation plans.

13  <div align="center">**SUBSTANTIVE ALLEGATIONS**</div>

14      36.    According to its public filings, PICO "together with its subsidiaries, engages in the water

15  resource and water storage, real estate, insurance, and agribusiness businesses."

16      37.    Throughout the Relevant Period, the Board (and particularly, the Compensation

17  Committee) overcompensated PICO's senior executives and, most notably, its CEO, defendant Hart,

18  irrespective of the Company's actual performance and the performance of its stock, despite the Board's

19  stated pay for performance policy, which purportedly hinged upon delivering a "superior return" to

20  shareholders and aligning shareholder and executive interests. The Board is directly responsible for the

21  disconnect between management and stockholder interests. For instance, in 2010, PICO's share price

22  *declined* by over 4% and lagged the Dow by almost *14%* and Defendants were forced to report negative

23  net income, substantially diminished free cash flow per share, and other decreased financial metrics.

24  Despite this, in 2010 executive compensation at PICO increased by an astounding *488%* for Hart.

25      38.    As detailed herein, in light of, *inter alia*, the Board's repeated "pay-for-performance"

26  statements (including those in the Proxy), and the precipitous drop in the Company's share price and

27  other key financial metrics delivered to stockholders by this current management team (led by Hart),

28  there is reason to doubt that: (a) the Board complied with its fiduciary duties; and/or (b) the Board's

<div align="center">- 7 -</div>

<div align="center">SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND UNJUST
ENRICHMENT</div>

1  2010 compensation decisions were protected business judgments. Plaintiff alleges that the Board's

2  2010 compensation decisions constituted a breach of their fiduciary duties of candor, good faith and

3  loyalty, as well as causing Hart to be unjustly enriched.

4  **The Board's Purported "Pay-For-Performance" Policy**

5      39.    Defendants have represented publicly that the Board's executive compensation practices

6  are firmly rooted in a "pay-for-performance" policy. For instance, in the Proxy, the Board stated that

7  the intent of its compensation policy was to align shareholder and executive interests. In particular, the

8  Board stated that their policy was to "reward executive[s] for achieving a *superior return...*" for

9  stockholders.

10     40.    Thus, in theory (and by Defendants' own admissions), when PICO achieves a "superior

11 return" for shareholders and aligns shareholder and executive interests, executive compensation should

12 increase, and when PICO fails to meet this criteria, executive compensation should decrease.  In

13 practice, however, the Board has increased executive compensation dramatically even when PICO's

14 share price and other key financial metrics decreased -- as they did during 2010.

15 **2010 Executive Compensation**

16     41.    In 2010, in exchange for delivering a substantial diminution in shareholder value,

17 PICO's CEO, defendant Hart, received nearly *$14.3 million* in executive compensation, as detailed

18 below:

| Name | Salary and Bonus | Stock Awards | All Other Compensation | Total Compensation[1] |
|---|---|---|---|---|
| Hart | $1,964,251 | $12,276,000 | $38,150 | $14,278,401 |

21     42.    As demonstrated in the table below, this compensation substantially exceeds defendant

22 Hart's compensation for 2009, which was a staggering *488% lower*:

| Name | Salary and Bonus | Stock Awards | All Other Compensation | Total Compensation |
|---|---|---|---|---|
| Hart | $2,397,394 | $0 | $32,250 | $2,429,644 |

[1] Total Compensation includes the following:  Salary, Bonus, Stock Awards, Option Awards, Non-Equity Incentive Plan Compensation, and All Other Compensation (as defined in the Proxy).

- 8 -

SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND UNJUST
ENRICHMENT

43.    Despite the facts that a "superior return" to shareholders and aligning shareholder and executive interests were the purported bases for the Board's pay for performance policy, and that the Company's stock price fell by 4% in 2010 and lagged the Dow by 14% (and Defendants produced dreadful financial results), the Board nevertheless increased 2010 CEO compensation by approximately *488%*.

**A Majority of PICO's Shareholders**
**Reject the Board's Business Judgment**

44.    Fortunately for the Company's shareholders, on May 13, 2011, for the first time in the Company's history, a "say on pay" vote was conducted via the Proxy, whereby PICO shareholders were given the chance to voice their dissatisfaction with the Board's clear disregard for their interests, the Board's own prior statements regarding its pay for performance compensation policy, and the Board's apparent refusal to acknowledge the Company's dreadful performance in determining executive compensation for 2010. The Company's stockholders were finally afforded the opportunity to vote on whether, as the Board claimed, the interests of PICO's executive officers' interests were in fact aligned with those of long-term shareholders.

45.    Prior to the Company's first say on pay vote, the Board published the Proxy, wherein it "recommended" to PICO shareholders that they should approve PICO's 2010 executive compensation, stating:

> *Our compensation philosophy centers around the principle of aligning pay and performance.* The primary objectives of our compensation program are to pay for performance, recruit, retain and motivate the highest quality executive officers who are critical to our success, align the interests of our named executive officers and other employees with those of our shareholders and promote excellent corporate governance. The CD&A section of this proxy statement provides a more detailed discussion of our executive compensation program and compensation philosophy.

> \*      \*      \*

> Shareholders will be asked at the Annual Meeting to approve the following resolution pursuant to this Proposal No. 2:

> RESOLVED, that the shareholders of PICO Holdings, Inc. approve, on an advisory basis, the compensation of the Company's named executive officers, disclosed pursuant to Item 402 of Regulation S-K in the Company's definitive proxy statement for the 2011 Annual Meeting of Stockholders.

- 9 -

SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND UNJUST ENRICHMENT

The Board unanimously recommends a vote "FOR" approval of the foregoing resolution.

46.     In the Proxy, Defendants also explicitly stated that "our board of directors, including our Compensation Committee, *values the opinions of our shareholders* and, to the extent there is any significant vote against our named executive officers' compensation as disclosed in this proxy statement, *we will consider our shareholders' concerns and evaluate what actions, if any, may be appropriate to address those concerns.*"

47.     In July 2010, the Dodd-Frank Wall Street Reform and Consumer Protection Act (the "Dodd-Frank Act") was enacted to require certain public companies to submit executive compensation plans to a shareholder vote, widely known as a "say on pay" vote. *See e.g.* 15 U.S.C. Section 78n-1.[2] Congress intended Dodd-Frank's say-on-pay vote to function as a referendum on whether the executive compensation awarded was in the best interests of shareholders. *See* S. Rep. No. 111-176, at 133 (2010) ("shareowner votes on pay [were meant to] serve as a direct referendum on the decisions of the compensation committee and [] offer a more targeted way to signal shareowner discontent than withholding votes from committee members."). Indeed, according to a Senate Banking Report, the purpose of the Dodd-Frank Act's say-on-pay vote is to provide an efficient means for shareholders, as the owners of a corporation, to collectively express whether the corporation's executive compensation is in their best interests as shareholders. *See* S. Rep. No. 111-76, at 133.

48.     In their relatively short history, negative "say on pay" votes on executive compensation have been extremely rare. For instance, between March 2010 and March 2011, out of 101 companies with say-on-pay voting, only two companies had negative votes rejecting the proposed pay: Jacobs Engineering Group, Inc. and Beazer Homes USA, Inc. *See*

---

[2]     Title IX of the Dodd-Frank Act, known as the Investor Protection and Securities Reform Act of 2010, contains the "say-on-pay" provisions at Subtitle E (Accountability and Executive Compensation), Section 951, requiring, among other things, that "[n]ot less frequently than once every 3 years, a proxy or consent or authorization for an annual or other meeting of the shareholders for which the proxy solicitation rules of the Commission require compensation disclosure shall include a separate resolution subject to shareholder vote to approve the compensation of executives . . ."

- 10 -

SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND UNJUST ENRICHMENT

www.pionline.com/article/20110315/DAILYREG/110319948.[3]  Accordingly, during the first year of "say on pay" votes under the Dodd-Frank Act, voting shareholders overwhelmingly endorsed companies' pay programs, providing 91.2% support on average.  *See* June 28, 2011 article entitled "U.S. Proxy Season Review: 'Say on Pay' Votes" available at http://blog.riskmetrics.com (the "June 28 Risk Metrics Article").

49.    This support exceeded the 89.2% average approval in 2010, when "say on pay" votes were mandated only at U.S. government-supported financial firms.  For 2011, as of June 28, 2011, shareholders had rejected compensation proposals in say on pay votes at only 37 companies, or just *1.7%* of the more than 2,200 companies in the Russell 3000 index that have reported vote results.  The June 28 Risk Metrics Article also stated:

> So far this season, S&P 500 companies have averaged 88.6 percent support, which is slightly less than the 91.8 percent approval for issuers in the Russell 3000 index, according to ISS data as of June 14.  At the sector level, large-cap industrial companies had the lowest average support of 87.1 percent, while large consumer retail firms received the highest approval at 90.7 percent.  Large financial firms, which traditionally have received more scrutiny over pay, had the second-highest approval average of 89.7 percent.  Within the Russell 3000 index, the energy sector received the lowest level of average support (88.8 percent), while consumer retail firms again received the highest average approval (92.8 percent).

50.    Thus, shareholders have almost uniformly supported companies' pay programs, and they have done so by overwhelming margins.  Indeed, of the 1,873 companies that had reported voting results as of May 27, 2011, more than two-thirds of those companies received 90% support or more from their voting shareholders.

51.    PICO's shareholders, however, have notably expressed their disapproval of the Board's compensation decisions.  On May 13, 2011, a majority of PICO's voting shareholders resoundingly *rejected* the Board's business judgment and its 2010 executive compensation decision.

---

[3]    In the prior year's proxy season (the 2010 proxy season), over 600 companies held say-on-pay votes, and only three of those companies failed to obtain shareholder approval: KeyCorp, Motorola, Inc., and Occidental Petroleum Corp. *See* http://josephandcohen.com/2010/06/joseph-law-newsbrief-%e2%80%9esay-on-pay%e2%80%9d-lessons-from-keycorp%e2%80%99s-2010-%e2%80%9cno-on-pay%e2%80%9d-vote/.

- 11 -

SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND UNJUST ENRICHMENT

08-28-11,03 06PM.CLASS ACTION                    Jannaz San Diego   ;3166643950                    # 19   35

52. As the Defendants subsequently reported in a Form 8-K filed with the SEC on May 19, 2011, the say-on-pay vote by PICO stockholders resulted in 11,782,217 votes against the 2010 executive compensation recommended by the Board, 7,508,152 votes in favor of the Board's recommendation, and 33,943 abstentions. Notably, the vote was not even close -- the Board's recommendation was rejected by *61%* of PICO's voting stockholders, even though there was no "formal," organized institutional opposition to the Board's recommendation.

53. The Board's claims that it purportedly *"values the opinions of our shareholders"* have, through their own inaction and silence, been exposed as mere lip-service. Indeed, it has been over three months since the Board received the negative vote regarding executive compensation and, upon information and belief, they have done nothing (including issuing any meaningful response whatsoever to PICO shareholders) regarding it. In fact, the Board has completely ignored the negative vote, acting as if it never happened.

54. The directors on the Board breached their fiduciary duties by materially increasing 2010 executive compensation in the wake of substantial diminution in shareholder value after claiming to adhere to a strict pay-for-performance policy, which purportedly hinged upon delivering a "superior return" to shareholders and aligning shareholder and executive interests. The inference that the Board breached its fiduciary duties is supported by the facts that: (a) a majority of the Company's stockholders voted that 2010 executive compensation was not in their best interests; and (b) the Board has yet to respond to the majority will of its stockholders (nor has it indicated it will) in any way even though the negative vote occurred over three months ago. By falsely representing that the Company's executives would receive additional compensation only if a "superior return" is delivered to PICO stockholders under a "pay for performance" policy, the Board also breached its fiduciary duties by issuing a series of materially misleading statements.

55. Thus, there is reason to doubt that the Board's actions and public representations were taken or made loyally, and/or in good faith, and/or are entitled to the presumptive protections of the business judgment rule.

- 12 -

SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND UNJUST ENRICHMENT

## DAMAGES TO PICO

56.   PICO has been damaged by the Board's awards of unwarranted, outsized executive compensation. In 2010, the Company's share price declined by 4% and lagged the Dow by nearly 14%. Additionally, the Company posted negative net income and a decrease in free cash flow per share. Yet, incredibly, executive compensation for Company's CEO increased by 488%, in direct violation of the Board's purported "pay for performance" compensation policy.

57.   When for the first time given the opportunity to offer their own independent judgment of the Company's executive compensation, a majority of PICO's voting shareholders firmly rejected the 2010 executive compensation (and rightfully so). Yet, even in the face of this visceral reaction by PICO's shareholders, the Board has not altered or amended the 2010 compensation, to the detriment of the Company and its stockholders. In fact, the Board has not even *acknowledged* the shareholders' significant rejection of 2010 compensation. By contrast, Hart has been unjustly enriched by his excessive 2010 compensation.

58.   By this derivative action, Plaintiff seeks to recover damages and other relief for PICO against Defendants for their breaches of fiduciary duties of candor, good faith and loyalty, and for unjust enrichment. Absent this action, as the Board has already amply demonstrated, the majority will of the Company's stockholders shall be rendered meaningless and the Company's rights against its wayward fiduciaries will not be exercised to the further detriment of the Company:

## DERIVATIVE AND DEMAND ALLEGATIONS

59.   Plaintiff incorporates the above-referenced paragraphs as if fully set forth herein.

60.   Plaintiff brings this action derivatively on behalf of PICO to redress injuries suffered, and yet to be suffered, by the Company as a direct and proximate result of Defendants' misconduct. Plaintiff is a current holder of PICO common stock and will adequately represent the interests of the Company in this litigation. Plaintiff has retained counsel experienced in litigating this type of action.

61.   The Board is currently comprised of the following directors: defendants Hart, Langley, Deuster, Ruppert, Sullivan, Leslie, Campbell, and Slepicka.

62.   There is doubt that the Board's decision to increase 2010 executive compensation was a protected business judgment, which excuses demand.   The Board claimed that its executive

- 13 -

SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND UNJUST
ENRICHMENT

compensation practices aligned management/stockholder interests because it paid-for-performance and that the Company's executives would receive additional compensation only if a "superior return" was delivered to PICO stockholders. Based on these representations (among others), a majority of the Company's stockholders rejected the Board's 2010 executive compensation recommendation, and the Board has failed to respond to the negative vote. These undisputed facts raise doubt that the Board's 2010 compensation decision was a protected business judgment. Thus, demand is excused.

63.     A majority of the Board is interested in a demand because there is substantial likelihood that they will be held liable for their conduct. The Board claimed that its executive compensation practices aligned management/stockholder interests because it paid-for-performance and that the Company's executives would receive additional compensation only if a "superior return" was delivered to PICO stockholders. Based on these representations (among others), a majority of the Company's stockholders rejected the Board's 2010 executive compensation recommendation, and the Board has failed to respond to the negative vote. These undisputed facts raise doubt that a majority of the Board complied with their fiduciary duties of loyalty and good faith. Thus, demand is excused.

64.     There is doubt that the Board's decision to issue false and misleading statements regarding its purported "pay-for-performance" policy was a protected business judgment, which excuses demand.    The Board claimed that its executive compensation practices aligned management/stockholder interests because it paid-for-performance and that the Company's executives would receive additional compensation only if a "superior return" was delivered to PICO stockholders. Despite this representation, even though the Company's stock price materially declined (as did other performance metrics), the Board still increased executive compensation, in direct contravention of their previously stated "pay-for-performance" policy. The Board's false and misleading statements raise doubt that they are entitled to the protections of the business judgment rule. Thus, demand is excused.

65.     A majority of the Board is interested in a demand because there is substantial likelihood that they will be held liable for their conduct. The Board claimed that its executive compensation practices aligned management/stockholder interests because it paid-for-performance and that the Company's executives would receive additional compensation only if a "superior return" was delivered to PICO stockholders. Despite this representation, even though the Company's stock price materially

- 14 -

SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND UNJUST ENRICHMENT

1   declined (as did other performance metrics), the Board still increased executive compensation, in direct

2   contravention of their previously stated "pay-for-performance" policy. Accordingly, the Board's false

3   and misleading statements raise doubt that the entire Board complied with their fiduciary duties of

4   loyalty and good faith. Because the entire Board faces a substantial likelihood of liability in connection

5   with the issuance of false and misleading statements, demand is excused.

6         66.     A pre-suit demand is excused because the entire Board recommended publicly that

7   PICO's shareholders unanimously approve PICO's 2010 executive compensation, including a material

8   pay increase for PICO's CEO. On May 13, 2011, a majority (61%) of PICO's voting shareholders

9   rejected the Board's recommendation. Yet, the Board has not altered or otherwise amended the 2010

10   executive compensation, nor indicated that it has any intention of doing so. By first recommending that

11   the Company's stockholders approve the excessive 2010 executive compensation, and then failing to

12   take any action whatsoever in the face of the adverse stockholder vote, the Board has openly

13   demonstrated its hostility to this action and that a pre-suit demand upon it to take such action is a

14   useless and futile act. Accordingly, demand is excused.

15         67.     There is doubt that the Board's decision to ignore the negative say on pay vote by PICO

16   shareholders was a protected business judgment, which excuses demand. In particular, the members of

17   the Board claimed that they "value[] the opinions of our shareholders." Despite this representation,

18   even after PICO's shareholders issued a negative say on pay vote, the Board has done absolutely

19   nothing, including issuing a response to shareholders. There is doubt that this decision was a protected

20   business judgment. Thus, demand is excused.

21         68.     A majority of the Board is interested in a demand because there is substantial likelihood

22   that they will be held liable for their conduct. In particular, the Board claimed that they "value[] the

23   opinions of our shareholders" Despite this representation, even after the Board received the negative

24   say on pay vote, the Board has done absolutely nothing, including issuing a response to shareholders,

25   which was a breach of their fiduciary duties. Accordingly, the entire Board faces a substantial

26   likelihood of liability in connection with the issuance of these false and misleading statements. Thus,

27   demand is excused.

28

- 15 -

SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND UNJUST
ENRICHMENT

69. Pre-suit demand on defendant Hart is excused because his principal professional occupation is his employment as the President and CEO of PICO. In addition, Defendants have admitted in the Proxy that defendant Hart is not independent. Accordingly, Hart has received and continues to receive substantial monetary compensation and other valuable benefits (including the excessive compensation complained of herein). Thus, Hart lacks independence, rendering him incapable of impartially considering a demand to commence and vigorously prosecute this action.

70. Moreover, as alleged herein, Hart received excessive and unwarranted executive compensation in 2010, and, as a result, was the direct recipient of financial benefits from the misconduct challenged herein that were not shared with PICO stockholders. Thus, Hart is directly interested in a demand, and accordingly, pre-suit demand upon Hart is excused.

71. Defendants Campbell, Leslie, Ruppert, and Deuster are each interested in a demand as a result of their conduct on the Compensation Committee. Pursuant to the Company's Compensation Committee Charter, directors on the Compensation Committee are responsible for, *inter alia*, setting executive compensation pursuant to the Board's "pay for performance" policy and reviewing among other things, the Company's performance in relation to that policy. Defendants Campbell, Leslie, Ruppert, and Deuster breached their fiduciary duties of due care, loyalty, and good faith, because the Compensation Committee, *inter alia*, awarded the above-discussed increased 2010 executive compensation, which was wholly divorced from the Company's financial performance. Further, despite claiming in the Proxy that the Compensation Committee "values the opinions of [] shareholders," defendants Campbell, Leslie, Ruppert, and Deuster have done nothing to rectify their above failures, despite the sound rejection of the Company's 2010 compensation by 61% of its stockholders. Therefore, defendants Campbell, Leslie, Ruppert, and Deuster (if not the entire Board) each face a substantial likelihood of liability for their breach of fiduciary duties and any demand upon them is futile.

72. A pre-suit demand is further excused because a majority of the Board either was at fault for the misconduct described herein and/or is liable for the misconduct described herein. As such, the Board members are disabled as a matter of law from objectively considering any pre-suit demand, rendering demand futile and excused.

- 16 -

SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND UNJUST ENRICHMENT

06-29-11,03 06PM.CLASS ACTION                    Janney San Diego   ;9166674955              # 14   13

### FIRST CAUSE OF ACTIONF

**Against Defendants for Breach of Fiduciary Duty in Connection
for the Issuance of False and Misleading Statements**

73.    Plaintiff incorporates the above-referenced paragraphs as if fully set forth herein.

74.    Each of the Defendants was a director and/or officer of PICO and as such owed to PICO the highest duty known to the law. Each of the Defendants agreed to and did participate in and/or aided and abetted one another in a deliberate course of action designed to divert corporate assets in breach of the fiduciary duties these Defendants owed to PICO.

75.    As demonstrated by the allegations above, the Defendants breached their fiduciary duties of loyalty, good faith, candor and independence owed to PICO and its shareholders, and failed to disclose material information and/or made material misrepresentations to shareholders regarding PICO's 2010 executive compensation scheme.

76.    The Defendants have violated fiduciary duties of care, loyalty, good faith, candor and independence owed to PICO and its shareholders, have engaged in unlawful self-dealing and have acted to put their personal interests and/or their colleagues' interests ahead of the interests of PICO and its shareholders. As directors and/or officers of PICO, the Defendants participated in the wrongful acts alleged herein. They thereby breached their fiduciary duties to PICO's shareholders.

77.    As corporate fiduciaries, the Defendants owed PICO and its shareholders a duty of candor and full and accurate disclosure. As a result of the conduct complained of, the Defendants made, or aided and abetted the making of, numerous misrepresentations to and/or concealed material facts from PICO's shareholders despite their duties to, *inter alia*, disclose the true facts regarding PICO. Thus they have violated their duty of candor.

78.    In committing the wrongful acts particularized herein, the Defendants have pursued or joined in the pursuit of a common course of conduct, and have acted in concert with one another in furtherance of their common plan or design.

79.    At all relevant times, the Defendants collectively and individually initiated a course of conduct which was designed to and did: (i) conceal the fact that the Company was overpaying its directors, officers and employees via compensation plans premised on an illusory "pay for

- 17 -

SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND UNJUST
ENRICHMENT

Exhibit A,Page 27

1  performance" executive compensation scheme; and (ii) maintain their directorial and executive

2  positions at PICO and the profits, power and prestige which they enjoyed as a result of these positions.

3      80.    In particular, in the Proxy (and other filings), the Board represented that the intent of the

4  Board's compensation policy is to "reward executive[s] for achieving a *superior return...*" for

5  stockholders and to align stockholder and executive interests.  Despite this (and other) representations,

6  when the Company's stock value (and other key financial metrics) decreased, the Board still increased

7  executive compensation.  Accordingly, it is clear that the Board's repeated statements that it pays for

8  performance were false and misleading.

9      81.    The Defendants' misconduct was not due to an honest error of judgment, but rather their

10  bad faith and was done knowingly, willfully, intentionally or recklessly.

11      82.    By reason of the foregoing acts, practices and course of conduct, the Defendants have

12  failed to exercise good faith and instead have acted knowingly or in reckless disregard of their fiduciary

13  obligations toward PICO and its public shareholders, harming PICO.

14  <center>**SECOND CAUSE OF ACTION**</center>

15  <center>**Against Defendants for Breach of Fiduciary Duty**</center>
<center>**in Connection with the Board's Compensation Practices**</center>

16

17      83.    Plaintiff incorporates the above-referenced paragraphs as if fully set forth herein.

18      84.    Each of the Defendants was a director and/or officer of PICO and as such owed to PICO

19  the highest duty known to the law.  Each of the Defendants agreed to and did participate in and/or aided

20  and abetted one another in a deliberate course of action designed to divert corporate assets in breach of

21  the fiduciary duties these Defendants owed to PICO.

22      85.    As demonstrated by the allegations above, the Defendants breached their fiduciary duties

23  of loyalty, good faith, candor and independence owed to PICO and its shareholders by failing to adhere

24  to the Company's purported pay-for-performance policy.  In particular, in the Proxy (and other filings),

25  the Board represented that the intent of the Board's compensation policy is to "reward executive[s] for

26  achieving a *superior return...*" for stockholders and to align shareholder and executive interests.

27  Despite this (and other) representations, when the Company's stock value (and other key financial

28  metrics) decreased, the Board still increased executive compensation.  This increase in executive

<center>- 18 -</center>

<center>SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND UNJUST
ENRICHMENT</center>

1  compensation in direct contravention of the Board's stated pay for performance policy was a breach of

2  the Board's fiduciary duties.

3      86.    The Defendants have violated fiduciary duties of care, loyalty, good faith, candor and

4  independence owed to PICO and its shareholders, have engaged in unlawful self-dealing, and have

5  acted to put their personal interests and/or their colleagues' interests ahead of the interests of PICO and

6  its shareholders. As directors and/or officers of PICO, the Defendants participated in the wrongful acts

7  alleged herein. They thereby breached their fiduciary duties to PICO's shareholders.

8      87.    In committing the wrongful acts particularized herein, the Defendants have pursued or

9  joined in the pursuit of a common course of conduct, and have acted in concert with one another in

10  furtherance of their common plan or design.

11      88.    The Defendants' misconduct was not due to an honest error of judgment, but rather their

12  bad faith and was done knowingly, willfully, intentionally or recklessly.

13      89.    By reason of the foregoing acts, practices and course of conduct, the Defendants have

14  failed to exercise good faith and instead have acted knowingly or in reckless disregard of their fiduciary

15  obligations toward PICO and its public shareholders, harming PICO.

16  <center>**THIRD CAUSE OF ACTION**</center>

17  <center>**Against the Defendants for Breach of Fiduciary Duty in Connection**</center>
18  <center>**with the Failure to Respond to the Negative Say on Pay Vote**</center>

18      90.    Plaintiff incorporates the above-referenced paragraphs as if fully set forth herein.

19      91.    Each of the Defendants was a director and/or officer of PICO and as such owed to PICO

20  the highest duty known to the law. Each of the Defendants agreed to and did participate in and/or aided

21  and abetted one another in a deliberate course of action designed to divert corporate assets in breach of

22  the fiduciary duties these Defendants owed to PICO.

23      92.    As demonstrated by the allegations above, the Defendants breached their fiduciary duties

24  of loyalty, good faith, candor and independence owed to PICO and its shareholders by failing to amend

25  or alter 2010 executive compensation (or even issue a response) in connection with the negative say on

26  pay vote. In particular, despite having their executive compensation program rejected by 61% of voting

27  shareholders, the Board has done nothing in response, in direct violations of their fiduciary duties.

28

<center>- 19 -</center>

<center>SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND UNJUST
ENRICHMENT</center>

93.     The Defendants have violated fiduciary duties of care, loyalty, good faith, candor and independence owed to PICO and its shareholders, have engaged in unlawful self-dealing and have acted to put their personal interests and/or their colleagues' interests ahead of the interests of PICO and its shareholders. As directors and/or officers of PICO, the Defendants participated in the wrongful acts alleged herein. They thereby breached their fiduciary duties to PICO's shareholders.

94.     In committing the wrongful acts particularized herein, the Defendants have pursued or joined in the pursuit of a common course of conduct, and have acted in concert with one another in furtherance of their common plan or design.

95.     The Defendants' misconduct was not due to an honest error of judgment, but rather their bad faith and was done knowingly, willfully, intentionally or recklessly.

96.     By reason of the foregoing acts, practices and course of conduct, the Defendants have failed to exercise good faith and instead have acted knowingly or in reckless disregard of their fiduciary obligations toward PICO and its public shareholders, harming PICO.

## FOURTH CAUSE OF ACTION

### Against the Defendants for Unjust Enrichment

97.     Plaintiff incorporates the above-referenced paragraphs as if fully set forth herein.

98.     As a result of the conduct described above, the Defendants will be and have been unjustly enriched at the expense of PICO, in the form of unjustified salaries, benefits, stock option grants and other emoluments of office.

99.     All the payments and benefits provided to the Defendants based upon or related to Defendants' executive compensation scheme were unjustly awarded and at the expense of PICO, resulting in substantially unearned benefits.

100.    The Defendants should be ordered to disgorge the gains which they have and/or will unjustly obtain and/or a constructive trust should be imposed for the benefit of the Company.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.     Against Defendants and in favor of PICO for the amount of damages sustained by the Company as a result of Defendants' violation of state law;

- 20 -

SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND UNJUST ENRICHMENT

08-26-11;03:06PM;CLASS ACTION                    Jansen San Diego  ;8106634355                    # 28   33

1       B.     Extraordinary equitable and/or injunctive relief as necessary or permitted by law, equity

2  and the statutory provisions sued hereunder, including disgorgement, attachment, impoundment,

3  imposition of a constructive trust on or otherwise restricting the disposition/exercise of improvidently

4  awarded executive compensation based upon false financial reporting and/or the proceeds of

5  Defendants' trading activities or their other assets so as to ensure that Plaintiff on behalf of PICO has an

6  effective remedy;

7       C.     Ordering the implementation and administration of internal controls and systems at

8  PICO designed to prohibit and prevent excessive and/or unwarranted executive compensation payments

9  to PICO's CEO and other senior executives;

10      D.     Awarding to Plaintiff the costs and disbursements of the action, including reasonable

11  attorneys' fees, and accountants' and experts' fees, costs, and expenses; and

12      E.     Granting such other and further relief as the Court deems just and proper.

13                           **JURY DEMAND**

14     101.   Plaintiff demands a trial by jury.

15  DATED: August 26, 2011         THE WEISER LAW FIRM, P.C.
                                  KATHLEEN A. HERKENHOFF (168562)

16

17

18                             KATHLEEN A. HERKENHOFF

19                          12707 High Bluff Drive, Suite 200
                          San Diego, CA 92130

20                          Telephone: 858/794-1441
                          Facsimile: 858/794-1450

21

22                          THE WEISER LAW FIRM, P.C.
                          ROBERT B. WEISER

23                          BRETT D. STECKER
                          JEFFREY J. CIARLANTO

24                          JOSEPH M. PROFY
                          121 North Wayne Avenue, Suite 100

25                          Wayne, PA 19087
                          Telephone: 610/225-2677

26                          Facsimile:  610/225-2678

27

28

<div align="center">- 21 -</div>

SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND UNJUST
ENRICHMENT

08-29-11.03 06PM;CLASS ACTION          Janney San Diego  ;9168654995          # 29/ 35



1   RYAN & MANISKAS, LLP
2   KATHERINE M. RYAN
    RICHARD A. MANISKAS
3   995 Old Eagle School Rd., Suite 311
    Wayne, PA 19087
4   Telephone: 484/588-5516
    Facsimile: 484/450-2582
5
6   Attorneys for Plaintiff
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
                        - 22 -
SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY AND UNJUST
                        ENRICHMENT

Exhibit A, Page 32

08-29-11.03 06PM;CLASS ACTION                    Jenney San Diego ,9166634965         # 32  33
AUG/26/2011/FRI 05:33 PM          FAX No.                              P. 001

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
STREET ADDRESS:  330 West Broadway
MAILING ADDRESS:  330 West Broadway
CITY AND ZIP CODE:  San Diego, CA 92101
BRANCH NAME:  Central
TELEPHONE NUMBER: (619) 450-7075

PLAINTIFF(S) / PETITIONER(S):     George Assad Derivatively on Behalf of Pico Holdings Inc

DEFENDANT(S) / RESPONDENT(S):  John R Hart et al.

GEORGE ASSAD DERIVATIVELY ON BEHALF OF PICO HOLDINGS INC VS. HART

| NOTICE OF CASE ASSIGNMENT | CASE NUMBER:<br>37-2011-00096962-CU-BT-CTL |
|---|---|

Judge:  Richard E. L. Strauss                          Department: C-75

COMPLAINT/PETITION FILED: 08/26/2011

### CASES ASSIGNED TO THE PROBATE DIVISION ARE NOT REQUIRED TO COMPLY WITH THE CIVIL REQUIREMENTS LISTED BELOW

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT), THE ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION FORM (SDSC FORM #CIV-730), A STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR) (SDSC FORM #CIV-359), AND OTHER DOCUMENTS AS SET OUT IN SDSC LOCAL RULE 2.1.5.

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

TIME STANDARDS:  The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time. General civil cases consist of all civil cases except:  small claims proceedings, civil petitions, unlawful detainer proceedings, probate, guardianship, conservatorship, juvenile, and family law proceedings.

COMPLAINTS:  Complaints and all other documents listed in SDSC Local Rule 2.1.5 must be served on all named defendants, and a Certificate of Service (SDSC form #CIV-345) filed within 60 days of filing.

DEFENDANT'S APPEARANCE:  Defendant must generally appear within 30 days of service of the complaint.  (Plaintiff may stipulate to no more than 15 day extension which must be in writing and filed with the Court.) (SDSC Local Rule 2.1.6)

DEFAULT:  If the defendant has not generally appeared and no extension has been granted, the plaintiff must request default within 45 days of the filing of the Certificate of Service. (SDSC Local Rule 2.1.7)

CASE MANAGEMENT CONFERENCE:  A Case Management Conference will be set within 150 days of filing the complaint.

ALTERNATIVE DISPUTE RESOLUTION (ADR):  THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO TRIAL, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. PARTIES MAY FILE THE ATTACHED STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (SDSC FORM #CIV-359).

YOU MAY ALSO BE ORDERED TO PARTICIPATE IN ARBITRATION.  IF THE CASE IS ORDERED TO ARBITRATION PURSUANT TO CODE CIV. PROC. 1411.11, THE COSTS OF ARBITRATION WILL BE PAID BY THE COURT PURSUANT TO CODE CIV. PROC. 1141.28.

FOR MORE INFORMATION, SEE THE ATTACHED ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION FORM (SDSC FORM #CIV-730)

SDSC CIV-721 (Rev. 11-06)                                                        Page 1

### NOTICE OF CASE ASSIGNMENT

08-29-11.03.06PM.CLASS ACTION                    Jnnooz San Diego   .9185834980           # 31   49



**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

**ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION**

CASE NUMBER: 37-2011-00086181-CU-BT-CTL      CASE TITLE: Nicolucci vs. Urban Outfitters Inc

**NOTICE:** All plaintiffs/cross-complainants in a general civil case are required to serve a copy of the following three forms on each defendant/cross-defendant, together with the complaint/cross-complaint:
    (1) this Alternative Dispute Resolution (ADR) Information form (SDSC form #CIV-730),
    (2) the Stipulation to Use Alternative Dispute Resolution (ADR) form (SDSC form #CIV-359), *and*
    (3) the Notice of Case Assignment form (SDSC form #CIV-721).

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts, community organizations, and private providers offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. The San Diego Superior Court expects that litigants will utilize some form of ADR as a mechanism for case settlement before trial, and it may be beneficial to do this early in the case.

Below is some information about the potential advantages and disadvantages of ADR, the most common types of ADR, and how to find a local ADR program or neutral. A form for agreeing to use ADR is attached (SDSC form #CIV-359).

**Potential Advantages and Disadvantages of ADR**
ADR may have a variety of advantages or disadvantages over a trial, depending on the type of ADR process used and the particular case:

| Potential Advantages | Potential Disadvantages |
| --- | --- |
| • Saves time | • May take more time and money if ADR does not resolve the dispute |
| • Saves money | |
| • Gives parties more control over the dispute resolution process and outcome | • Procedures to learn about the other side's case (discovery), jury trial, appeal, and other court protections may be limited or unavailable |
| • Preserves or improves relationships | |

**Most Common Types of ADR**
You can read more information about these ADR processes and watch videos that demonstrate them on the court's ADR webpage at http://www.sdcourt.ca.gov/adr.

**Mediation:** A neutral person called a "mediator" helps the parties communicate in an effective and constructive manner so they can try to settle their dispute. The mediator does not decide the outcome, but helps the parties to do so. Mediation is usually confidential, and may be particularly useful when parties want or need to have an ongoing relationship, such as in disputes between family members, neighbors, co-workers, or business partners, or when parties want to discuss non-legal concerns or creative resolutions that could not be ordered at a trial.

**Settlement Conference:** A judge or another neutral person called a "settlement officer" helps the parties to understand the strengths and weaknesses of their case and to discuss settlement. The judge or settlement officer does not make a decision in the case but helps the parties to negotiate a settlement. Settlement conferences may be particularly helpful when the parties have very different ideas about the likely outcome of a trial and would like an experienced neutral to help guide them toward a resolution.

**Arbitration:** A neutral person called an "arbitrator" considers arguments and evidence presented by each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are usually relaxed. If the parties agree to binding arbitration, they waive their right to a trial and agree to accept the arbitrator's decision as final. With nonbinding arbitration, any party may reject the arbitrator's decision and request a trial. Arbitration may be appropriate when the parties want another person to decide the outcome of their dispute but would like to avoid the formality, time, and expense of a trial.

**Exhibit A, Page 34**

08-23-11,03 06PM,CLASS ACTION                    Janney San Diego   ,9196634355              # 32   34

**Other ADR Processes:**  There are several other types of ADR which are not offered through the court but which may be obtained privately, including neutral evaluation, conciliation, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR processes. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute. Be sure to learn about the rules of any ADR program and the qualifications of any neutral you are considering, and about their fees.

<u>Local ADR Programs for Civil Cases</u>

**Mediation:**  The San Diego Superior Court maintains a Civil Mediation Panel of approved mediators who have met certain minimum qualifications and have agreed to charge $150 per hour for each of the first two (2) hours of mediation and their regular hourly rate thereafter in court-referred mediations.

<u>On-line mediator search and selection:</u>  Go to the court's ADR webpage at <u>www.sdcourt.ca.gov/adr</u> and click on the "Mediator Search" to review individual mediator profiles containing detailed information about each mediator including their dispute resolution training, relevant experience, ADR specialty, education and employment history, mediation style, and fees and to submit an on-line Mediator Selection Form (SDSC form #CIV-005). The Civil Mediation Panel List, the Available Mediator List, individual Mediator Profiles, and Mediator Selection Form (CIV-005) can also be printed from the court's ADR webpage and are available at the Mediation Program Office or Civil Business Office at each court location.

**Settlement Conference:**  The judge may order your case to a mandatory settlement conference, or voluntary settlement conferences may be requested from the court if the parties certify that: (1) settlement negotiations between the parties have been pursued, demands and offers have been tendered in good faith, and resolution has failed; (2) a judicially supervised settlement conference presents a substantial opportunity for settlement; and (3) the case has developed to a point where all parties are legally and factually prepared to present the issues for settlement consideration and further discovery for settlement purposes is not required. Refer to SDSC Local Rule <u>2.2.1</u> for more information. To schedule a settlement conference, contact the department to which your case is assigned.

**Arbitration:**  The San Diego Superior Court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience. Refer to SDSC Local Rules <u>Division II, Chapter III</u> and Code Civ. Proc. <u>§ 1141.10 et seq</u> or contact the Arbitration Program Office at (619) 450-7300 for more information.

<u>More information about court-connected ADR:</u> Visit the court's ADR webpage at <u>www.sdcourt.ca.gov/adr</u> or contact the court's Mediation/Arbitration Office at (619) 450-7300.

**Dispute Resolution Programs Act (DRPA) funded ADR Programs:**  The following community dispute resolution programs are funded under DRPA (Bus. and Prof. Code §§ 465 et seq.):
- In Central, East, and South San Diego County, contact the National Conflict Resolution Center (NCRC) at <u>www.ncrconline.com</u> or (619) 238-2400.
- In North San Diego County, contact North County Lifeline, Inc. at <u>www.nclifeline.org</u> or (760) 726-4900.

**Private ADR:**  To find a private ADR program or neutral, search the internet, your local telephone or business directory, or legal newspaper for dispute resolution, mediation, settlement, or arbitration services.

<u>Legal Representation and Advice</u>

To participate effectively in ADR, it is generally important to understand your legal rights and responsibilities and the likely outcomes if you went to trial. ADR neutrals are not allowed to represent or to give legal advice to the participants in the ADR process. If you do not already have an attorney, the California State Bar or your local County Bar Association can assist you in finding an attorney. Information about obtaining free and low cost legal assistance is also available on the California courts website at <u>www.courtinfo.ca.gov/selfhelp/lowcost</u>.

**Exhibit A, Page 35**

08-24-11.03 00PM.CLASS ACTION                    Lennoy San Diego  ,9166634958              # "3: 1.

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | FOR COURT USE ONLY |
|---|---|
| STREET ADDRESS:  330 West Broadway<br>MAILING ADDRESS:  330 West Broadway<br>CITY, STATE, & ZIP CODE: San Diego, CA  92101-3827<br>BRANCH NAME:  Central | |

| PLAINTIFF(S): Anna Nicolucci |
|---|
| DEFENDANT(S): Urban Outfitters Inc et al. |
| SHORT TITLE:  NICOLUCCI VS. URBAN OUTFITTERS INC |

| STIPULATION TO USE ALTERNATIVE<br>DISPUTE RESOLUTION (ADR) | CASE NUMBER:<br>37-2011-00086181-CU-BT-CTL |
|---|---|

Judge: Judith F. Hayes                                          Department: C-68

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution (ADR) process.  Selection of any of these options will not delay any case management timelines.

☐ Mediation (court-connected)                    ☐ Non-binding private arbitration

☐ Mediation (private)                                    ☐ Binding private arbitration

☐ Voluntary settlement conference (private)     ☐ Non-binding judicial arbitration (discovery until 15 days before trial)

☐ Neutral evaluation (private)                        ☐ Non-binding judicial arbitration (discovery until 30 days before trial)

☐ Other (specify e.g., private mini-trial, private judge, etc.): _____

_____

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: (Name) _____

_____

_____

Alternate neutral (for court Civil Mediation Program and arbitration only): _____

Date: _____              Date: _____

Name of Plaintiff                                           Name of Defendant

Signature                                                      Signature

Name of Plaintiff's Attorney                             Name of Defendant's Attorney

Signature                                                      Signature

If there are more parties and/or attorneys, please attach additional completed and fully executed sheets.

It is the duty of the parties to notify the court of any settlement pursuant to Cal. Rules of Court, rule 3.1385.  Upon notification of the settlement, the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court.

IT IS SO ORDERED.

Dated: 02/18/2011                                          _____
                                                                    JUDGE OF THE SUPERIOR COURT

SDSC CIV-359 (Rev 12-10)          STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION                    Page: 1

1

## CERTIFICATE OF SERVICE

2

*Assad  v. Hart, et al.*
Case No. _____

3

4      I hereby certify that on September 30, 2011, I electronically transmitted the attached

5   document entitled **NOTICE OF REMOVAL OF ACTION** to the Clerk's Office using the

6   CM/ECF system for filing and mailed a true and correct copy of same on September 30, 2011 as

7   set forth below:

8       Kathleen A. Herkenhoff
        The Weiser Law Firm
9       12707 High Bluff Drive, Suite 200
        San Diego, CA  92130
10      Tel:  858 794-1441
        Fax:  858 794-1450
11      kah@weiserlawfirm.com

12
        Katherine M. Ryan
13      Richard A. Maniskas
        RYAN & MANISKAS, LLP
14      995 Old Eagle School Rd., Suite 311
        Wayne, PA  19087
15      Tel:  484 588-5516
        Fax: 484 450-2582
16      kryan@rmclasslaw.com

17
   Attorneys for Plaintiff George Assad
18

19
                              s/Robert W. Brownlie
20                            ROBERT W. BROWNLIE

21

22

23

24

25

26

27

28

DLA Piper LLP (US)
San Diego           WEST\224758243.1